UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 3137, LLC, et als.,<br>     Plaintiffs,<br>v.<br>TOWN OF HARWICH, et als.,<br>     Defendants. | )<br>) C.A. No.: 1:21-cv-10473-DJC<br>)<br>) **LEAVE TO FILE GRANTED**<br>) **DECEMBER 13, 2021**<br>)<br>) |

**PLAINTIFFS' SURREPLY IN SUPPORT OF MEMORANDUM IN OPPOSITION TO DEFENDANT GAIL SLUIS'S MOTION TO DISMISS**

As Ms. Sluis concedes, the Court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the complaint set forth "a plausible claim upon which relief may be granted." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir.2013). The court must take all of the pleaded factual allegations as true "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell v. Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Barring "narrow exceptions" not applicable here, courts must consider only the complaint, documents attached to it, and documents expressly incorporated into it. Waterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). Thus, the primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and discovery process because, based on the factual scenario on which the case rests, the plaintiff could never win. In short, a plaintiff is not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in the complaint a plausible claim. This the Plaintiffs have done.[1]

---

[1] Gail Sluis cherry-picks those facts which fit her self-serving narrative, and asks this Court to ignore other facts which she cannot contradict. For example, Plaintiffs allege that Chairman MacAskill in private conversations commented that the Noise Bylaw might successfully be used to put Ember and The Port out of business. AMEND. COMPL. at ¶ 67.

Plaintiffs further allege that the John/Jane Doe defendants – individuals who may own or operate competing businesses and/or are current or former agents, employees or representative of the Town of Harwich, including the Harwich Chamber of Commerce or other actors who, including through more than forty (40) anonymous social media accounts – cyberstalked the Plaintiffs and conspired with Defendants to harass, slander, defame, threaten, intimidate and coerce the Plaintiffs in violation of federal and state law. Id. at ¶ 32.

1

Ms. Sluis now argues that because her restaurant manager, Rich Hristov, is not listed as an "official" member of the ad hoc noise containment committee, there is no "nexus between her and the Town which endowed her alleged conduct with color of law or made her into a co-conspirator." REPLY at 1-2.  This is a bridge too far.  Indeed, Rich Hristov is the President of the Harwich Chamber of Commerce (the "Chamber").  The Chamber's Executive Director, Cyndi Williams, is a member of the ad hoc noise committee and directly liaises with Chairman MacAskill and the other defendant members of the Board and Town Administrator.  Importantly, the Chamber's role is to promote the economic vitality of its member businesses, which include Ms. Sluis's restaurant, The 400 East – a direct competitor of Ember and The Port – which also holds an entertainment license.  To argue that Rich Hristov is not a "member" of the noise committee ignores his unique position and ability to influence directly or indirectly the same, or to receive non-public information, including through private social media accounts, which benefit his and other competing restaurants at the expense of Ember and The Port.

Importantly, Mr. Hristov "absence" from the inherently contradictory[2] "lists" of "members" of ad hoc noise containment committee is in no way "central" to Plaintiffs' claims, and also defines their lack of authenticity.  Waterson, 987 F.2d at 3.  Likewise, Mr. Hristov's affidavit fails to offer any explanation as to why or how he did not receive, learn of or otherwise discuss with Ms. Sluis or others the non-public memorandum, dated June 12, 2020 and annexed as Exhibit V to the Amended Complaint.  This memorandum discusses renewing entertainment licenses during the COVID-19 pandemic, and the Health Director's recommendation to condition license renewals to exclude live entertainment, which directly affects not only his employer

---

[2] For example, Exhibit 2 to the Reply purports to contain a "certified" list of the "members" of the ad hoc noise committee.  This "certified" list identifies seven (7) individuals whose appointment to the committee expired on December 31, 2020, except for one: Jake Domos, whose term expires on December 31, 2022.  Yet, on the Town's website, annexed as Exhibit 3 to the Reply, the "list" of committee members is missing three members included on the "certified" list, but also includes Chairman MacAskill, who is merely the Board's "liaison" to the committee and not a "member."  These lists cannot be authenticated.

restaurant's entertainment license, but live music directly sponsored by the Harwich Chamber of Commerce for the benefit of its members. AMEND. COMPL. at ¶¶ 67, 85.

Similarly, Mr. Hristov's affidavit is utterly silent as to whether he ever attended meetings of the noise committee; whether he discussed Ember or The Port, or the Noise Bylaw, including with Chairman MacAskill or any other member of the Board or the noise committee, or with his boss, Ms. Sluis; or whether he owns or knows who owns the "anonymous" social media accounts used to target, harass and defame Plaintiffs. See AMEND. COMPL. at ¶ 85. Instead, Mr. Hristov's affidavit cleverly skates around these issues and his direct connection to the Chamber, the noise committee and Ms. Sluis, and how his many roles serve as a conduit for Ms. Sluis to learn non-public information that she may have used to further her conspiracy to "shut down" those "Brackett boys." Perhaps most notable is the fact that Ms. Sluis submits no affidavit of her own.

Thus, none of Ms. Sluis's documents, nor the self-serving statements of her counsel, actually contradict Plaintiffs' allegations, is central to Plaintiffs' claims, or otherwise meets the "narrow exceptions" which permit the Court to look beyond the complaint and its exhibits without converting the 12(b)(6) motion to a Rule 56 motion. Waterson, 987 F.2d at 3. Similarly, the absence of Ms. Sluis's additional documents in no way hamstrings this Court's inquiry into the viability of Plaintiffs' own allegations. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir.1998). As a result, the Court must disregard Ms. Sluis's documents.

If this Court intends to admit Ms. Sluis's documents into the record and thereby convert the Rule 12(b)(6) motion into a Rule 56 motion, then Plaintiffs respectfully request a reasonable opportunity to depose Ms. Sluis, Mr. Hristov, and Cyndi Williams, Executive Director of the Harwich Chamber of Commerce, and to present all the material that is pertinent to the motion. FED.R.CIV.P. 12(d); Bartlett v. Dep't of the Treasury (I.R.S.), 749 F.3d 1, 12 (1st Cir.2014).

Respectfully submitted,

**PLAINTIFFS,**

By their Attorney,

*/s/ Raymond H. Tomlinson, Jr.*
Raymond H. Tomlinson, Jr., BBO# 654855
TOMLINSON | LAW
1170 Main Street, Suite #1
West Barnstable, MA 02668
Telephone: (508) 348-9030
Facsimile: (508) 422-0930
rht@tomlinsonlaw.com

Dated: December 17, 2021

## CERTIFICATE OF SERVICE

I, Raymond H. Tomlinson, Jr., hereby certify that on this day, I caused a true and accurate copy of the foregoing document, together with all exhibits and other documents annexed thereto, to be electronically filed and served through the Electronic Case Filing System upon all registered participants as identified on the Notice of Electronic Filing, and that a paper copy shall be served via electronic mail and/or U.S. Mail Deliver thereof, postage prepaid, upon those indicated as non-registered participants.

*/s/ Raymond H. Tomlinson, Jr.*
Raymond H. Tomlinson, Jr.

Dated:  December 17, 2021